UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ONE CELLULAR PHONE | Case No. 3:23MJ445 (TOF) |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, LAWRENCE SMITH, being duly sworn, depose and state as follows:

### INVESTIGATOR BACKGROUND

1.  I have been a U.S. Postal Inspection Service (hereinafter "USPIS") Task Force Officer since September 2019. I am assigned to the Boston Division, working out of Hartford, Connecticut. Prior to becoming a USPIS Task Force Officer, I was a police officer for the City of Waterbury Police Department (Waterbury, CT) for twenty years. I am presently a duly sworn police Detective for the City of New Britain Police Department (New Britain, CT) for the last ten years. I have a combined police experience of over thirty years. I have participated in numerous investigations of complex drug conspiracies and all stages of illegal narcotics distributions, in violation of 21 U.S.C. §§ 841(a)(1), 843(b) and 846 and violations of the State of Connecticut General Statutes for distribution of illegal narcotics. I have been the affiant on several search warrant applications which have led to the seizure of significant quantities of illegal narcotics, related paraphernalia, and packaging used in the drug trade.

2.  I am currently assigned to the USPIS sponsored Narcotics and Bulk Cash Trafficking Task Force (herein after "NBCT-TF"), which includes responsibilities for investigating narcotics and illicit proceeds trafficked via the US Mail. The NBCT-TF currently consists of six Postal Inspectors, detectives from the Hartford, New Britain, Meriden, and Groton

Police Departments, and a Special Agent from the USPS, Office of Inspector General.

3.      I am a law enforcement officer of the U.S. within the meaning of Title 18 U.S.C. § 3061 and am empowered by law to conduct investigations and make arrests for offenses enumerated in Title 21 U.S.C. §841(a)(1) and other federal offenses.

4.      I have personally been involved in investigations related to the transportation of cocaine, fentanyl, heroin, and methamphetamines through the United States (U.S.) Mail. In fact, based on my training and experience, I am aware that it is common for individuals and Drug Trafficking Organizations (DTOs) to ship such controlled substances through the U.S. Mail.

## PURPOSE OF THE AFFIDAVIT

5.      As part of my duties, I am conducting, along with other law enforcement officers, an investigation into Joseph Giovanni Soto ("Soto") and others for committing violations of Title 21, United States Code, Section 846 (Conspiracy to Possess with Intent to Distribute, Distribution and/or Manufacture of Controlled Substances); and Title 21, United States Code, Section 841(a)(1) (Possession with Intent to Distribute and Distribution of Narcotics) (collectively, the "Target Offenses").

6.      On April 29, 2023, I signed an affidavit in support of a search warrant for Joseph Giovanni Soto's residence of 52 Ellsworth Dr., Bloomfield Connecticut ("Subject Premises 2"), which was being used in furtherance of the Target Offenses.  A copy of that affidavit (hereinafter, the "Original Affidavit") has been attached as Attachment C and is incorporated herein.  On this same date, on the basis of my application and the Original Affidavit, United States Magistrate Judge Robert A. Richardson issued the requested search warrant authorizing the search of Subject Premises 2. The search warrant was executed on May 1, 2023.

7. I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of the following device (the "**SUBJECT TELEPHONE**"), further described in Attachment A, that were seized from Joseph Giovanni Soto during the execution of the above-search warrant, and the extraction from that property of electronically stored information as described in Attachment B.

8. Based on the facts set forth in this affidavit, there is probable cause to believe that the **SUBJECT TELEPHONE** was used as instrumentalities of these offenses and contain evidence of the commission of the Target Offenses.

## **PROBABLE CAUSE**

9. On May 1, 2023, at approximately 3:35 P.M. or shortly thereafter, agents and officers executed the above referenced search warrant at Subject Premises 2. The arrest and seizures of the **SUBJECT TELEPHONE** are described below.

10. On May 1, 2023, investigators conducted surveillance at 79 Memorial Drive in Holyoke, MA, where a suspicious parcel was expected to be delivered and at Subject Premises 2 and observed the following:  At approximately 11:52 AM, the suspicious parcel was delivered to 79 Memorial Drive in Holyoke, MA..  No one was home at the time.  At approximately 1:27 PM, the resident of 79 Memorial Drive, MA, arrived at the residence and brought the parcel inside. One minute later, J.M., a previously identified runner, arrived at 79 Memorial Drive and was observed with A.M., who was speaking to someone on a cellular phone.  J.M. circled the area in his car before departing, in a manner which I believe was to conduct counter-surveillance, and headed towards J.M.'s residence in Springfield (972 Morgan Road, West Springfield, MA) at approximately 1:58 PM.  At approximately 2:25 PM, J.M. was observed in his driveway at 972

Morgan Road.

11. In the meantime, a few minutes after A.M. retrieved the suspicious parcel, at approximately 1:35 PM, investigators conducting surveillance at Soto's residence observed Soto departing Subject Premises 2. At approximately 2:52 PM, investigators observed Soto's vehicle in the driveway of 972 Morgan Road. According to Google Maps, it is an approximately 35-40 minute drive from Subject Premises 2 to 972 Morgan Road in West Springfield, MA. At approximately 3:32 PM, Soto returned to Subject Premises 2 carrying a brown paper bag, entered the residence. Based on my training and experience, and the average commute times as well as the timing of the parcel delivery and arrival of Soto at 972 Morgan Road, I believe that someone notified Soto of the delivery of the parcel at 79 Memorial Drive and communicated that the parcel would be ready for pick-up at 972 Morgan Road. I also believe that J.M. communicated what time he would be arriving at 972 Morgan Road, after conducting what I believed to be 15 minutes of countersurveillance at 79 Memorial Drive. Based on this timing, I believe that Soto likely had a cellular phone on his person to communicate with A.M. and J.M. about the parcel delivery and pickup location and time.

12. After Soto entered his residence, investigators executed an authorized search warrant on Subject Premises 2 and located two (2) compressed bricks of white powder substance that field tested positive for the presence of cocaine were seized in the brown paper bag at the above residence. The two (2) bricks of the white powder substance weighed over four (4) pounds. Soto was arrested and charged with violation of C.G.S. 21a-277a(1A+), Possession with intent to Sell/Distribution of Narcotics, along with several other firearm charges. Soto was released on bond from State custody on May 2, 2023.

13. Shortly after Joseph Giovanni Soto's arrest, investigators seized one Apple iPhone in a light-blue case labeled with PEAP IS0001376340 ("**SUBJECT TELEPHONE**") from Soto's person. The **SUBJECT TELEPHONE** was the only phone on Soto's person at the time of his arrest. On the date of his arrest, investigators executed a federally authorized search warrant on his residence and no additional phones were located in the household, other than the phone belonging to R.R., whom investigators know as Soto's girlfriend. At the time of his arrest, Soto was not cooperative with providing the phone number to his phone. However, only one phone number was identified as associated with Soto during the course of the investigation. Furthermore, given the timing between his arrival at Subject Premises 2 and his arrest, which was only minutes, it is likely that the phone he had on his person was the phone he was using while in his car to communicate with A.M. and J.M. regarding the parcel delivery and pickup location and time.

14. The **SUBJECT TELEPHONE** was seized and placed on airplane mode to retain any evidential value. The telephone number to the **SUBJECT TELEPHONE** is unknown at this time.

15. On May 8, 2023, investigators called the phone number associated with Soto, and a male voice picked up the phone. Although investigators were unable to definitively identify the voice on the phone, because Soto was released on bond from state charges on May 3, 2023, the day after his arrest and six days prior to the date of this application, it is plausible that he obtained a new phone and transferred his existing phone number to that new phone. Thus, notwithstanding the fact that the phone number associated with Soto is currently in use, for the reasons set forth above, based on my experience and training, I believe that the phone seized from Soto on the date

of his arrest is the phone Soto was using in furtherance and in connection with the Target Offenses.

16. During the investigation, Task Force officers conducted surveillance on the delivery of suspicious U.S. Postal parcels sent from Puerto Rico and addressed to various Connecticut-based drop addresses used by Soto and the DTO. The suspicious parcels identified in this investigation are consistent in their weight, size, and postage, and are sent from consistent locations in Puerto Rico to various drop addresses in Connecticut which have been identified by the investigation. Investigators have also seized suspicious parcels consistent with this profile and opened the parcels pursuant to authorized search warrants. The search of these parcels revealed kilogram quantities of cocaine contained inside each parcel.

17. On April 26, 2022, investigators conducted surveillance of a suspicious parcel (Parcel 3) addressed to a co-conspirator ("CC1") at 122 Willow Street in New Britain at approximately 10:44 AM. During the surveillance, investigators observed CC1 (who had been previously identified as a "runner," or individual who retrieved and delivered parcels to the "stash locations") receiving a suspicious parcel at 122 Willow Street. After retrieving the package, CC1 placed a call at approximately 2:28 PM, which through toll analysis, investigators determined was made to Soto's telephone. Investigators later observed CC1 leaving 122 Willow Street to deliver the parcel to a stash location at 31-33 Wakefield Court, First Floor, New Britain, CT ("Subject Premises 1") at approximately 2:55 PM.

18. On the same date, investigators conducted surveillance of a second suspicious parcel (Parcel 4) addressed to a second co-conspirator ("CC2") at 17 Stanwood Circle in New Britain. The package was delivered at approximately 1:10 PM. An analysis of toll records indicates a call from CC2 to Soto's telephone at 1:21 PM. Shortly thereafter, investigators

observed a Ford pick-up registered to Soto leaving 17 Stanwood Circle and driving to Subject Premises 1, where another co-conspirator (CC3) brought the package into Subject Premises 1. After retrieving the package, the second co-conspirator placed a call at approximately 2:28 PM, which through toll analysis, investigators determined was made to Soto. Investigators later observed the co-conspirator leaving 122 Willow Street to deliver the parcel to Subject Premises 1 at approximately 2:55 PM.

19. On several other occasions, Soto retrieved suspicious parcels himself delivered to various drop addresses, shortly after the delivery of the suspicious parcel, indicating that he had received notification from the runner or recipient of the suspicious parcel that it had been delivered. Seizures of suspicious parcels identified in the course of this investigation have revealed that the parcels contain kilo-gram quantities of cocaine. Based upon my training and experience, I know that drug traffickers routinely use mobile telephones to communicate with co-conspirators to conduct drug-related transactions, including to arrange and coordinate pick up and drop off of narcotics at stash locations, meeting locations for drug transactions, negotiate prices of drug transactions, and facilitate other aspects of ongoing narcotics trafficking activity.

20. Based upon my training and experience, although some drug traffickers only maintain one cellular phone, I know that other drug traffickers frequently have access to several cellular telephones, and that they periodically use newly acquired cellular telephones. I know that narcotics traffickers sometimes use cellular telephones subscribed to by other persons and prepaid cellular telephones that require the purchaser to provide little or no identifying information to purchase, activate and utilize the telephone, all of which is done in an effort to avoid detection and thwart the efforts of law enforcement.

21.     The investigation into Joseph Giovanni Soto's drug trafficking activity has shown that the cellular telephone communications Soto and the co-conspirators is consistent with my training and experience.   Accordingly, I believe that the **SUBJECT TELEPHONE** is being used, in part, for the purpose of committing the Target Offenses.

## INFORMATION REGARDING CELLULAR TELEPHONES

22.     Based on my knowledge, training, and experience, I am aware that a mobile or cellular telephone, commonly referred to as a cell phone, is a handheld wireless device used for voice and data communication through radio signals.   A cell phone, usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, cell phones offer a broad range of other capabilities. These capabilities include, among others: running software or applications; storing contact names and phone numbers in electronic address books, commonly referred to as a cell phone user's contacts; sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Cell phones may also include geo-location and global positioning system ("GPS") technology for determining the location of the device.

23.     Based on my training and experience, I know that cocaine dealers take or cause to be taken photographs of their product. These photographs are often taken with a cellular telephone. Many cellular telephones today have a similar capability of a small computer and can be used to store large amounts of data. The contents of a cellular telephone can be transferred from telephone to telephone and can be backed up on a home computer or on online storage systems like the Cloud.

These telephones will often contain a wealth of information about customers and/or supplies. This information will often be contained in both the contacts portion of the telephone as well as call logs sent and received as well as conversations through text or SMS messages.

24. Based on my training and experience, I know that when a cellular device acting as a camera is used to take a phonograph or video, the device will often store information beyond the photograph itself. This "meta data" can include, the size of the file, its location on the device, the time and date of the photograph or video, GPS coordinates for where the photograph or video was taken, whether and when it has been accessed or modified, what device took the photograph or video, and other properties or data regarding the photograph or video.

25. As described above and in Attachment B, this application seeks permission to search and seize data and information that the **SUBJECT TELEPHONE** might contain, in whatever form they are stored. Based on my knowledge, training, and experience, I know that the information set forth in Attachment B tends to exist on wireless telephones like the **SUBJECT TELEPHONE**. I am also aware that electronic devices can store information for long periods of time. Even when a user deletes information from a device, it can sometimes be recovered with forensics tools. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

26. Searching for the evidence described in Attachment B may require a range of data analysis techniques. In some cases, agents and computer analysts may be able to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases,

however, such techniques may not yield the evidence described in the warrant. Criminals can mislabel or hide information, encode communications to avoid using key words, attempt to delete information to evade detection, or take other steps designed to frustrate law enforcement searches for information. These steps may require agents and law enforcement or other analysts with appropriate expertise to conduct more extensive searches, such as scanning storage areas unrelated to data and information described in Attachment B, or perusing all stored information briefly to determine whether it falls within the scope of the warrant. In light of these difficulties, the DEA, or other law enforcement agency, intends to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described in Attachment B.

27. It is also requested that the Court authorize the retrieval of the above-described stored electronic information by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device. I am aware that in some cases the software or equipment necessary to analyze wireless telephones in this manner is not readily available to law enforcement during the course of the execution of a search warrant. Further, turning on wireless phones in a non-laboratory setting, where there is no "jammer" active or radio shielding devices, permits additional signals to be received by the phone and thereby alters the data present in the phone at the time of seizure. Therefore, it is often necessary to remove a seized phone to a laboratory in order to preserve the data therein from being corrupted.

28. It is also requested that warrant be deemed executed once the **SUBJECT TELEPHONE** has been seized in the manner described above, and that further analysis of the images be permitted at any time thereafter.

## CONCLUSION

29. Based on this information set forth in this affidavit as well as the Original Affidavit, I respectfully submit that there is probable cause to believe that the **SUBJECT TELEPHONE** contains evidence of the Target Offenses as specified in Attachment B, which is incorporated herein by reference.

30. Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

Respectfully submitted,

Lawrence Smith
Digitally signed by Lawrence Smith
Date: 2023.05.09 16:31:59 -04'00'

Lawrence Smith
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me by telephone this __9th__ day of May 2023.

Date: 2023.05.09 17:00:15 -04'00'

HONORABLE
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to be Searched

The listed **SUBJECT TELEPHONE** is currently located at the USPS Hartford Domicile:

An Apple iPhone in a light blue-colored case, seized on May 1, 2023, from 52 Ellsworth Dr. Bloomfield, Connecticut (Subject Premises 2) and labeled with PEAP IS0001376340.



This warrant authorizes the forensic examination of the **SUBJECT TELEPHONE** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### Particular Thing to be seized

1. the telephone number, ESN number, serial number, and SIM card number of the SUBJECT TELEPHONE;

2. the numbers, digits, stored messages (voice and/or text), letters, symbols, data, information, and images stored in the memory of the SUBJECT TELEPHONE;

3. descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to, the above-described crimes (violations of 21 U.S.C. §§ 841(a)(1) and 846);

4. any and all records, however created or stored, which tend to demonstrate ownership and use of the SUBJECT TELEPHONE, and identification bearing the name or photograph of any person, telephone-books, address books, date books, calendars, personal files, and photographs of persons contained in the SUBJECT TELEPHONE;

5. any and all evidence showing or tending to show the identity of the maker or user of the data and information contained in the SUBJECT TELEPHONE, such as passwords, sign-on codes, and program design;

6. GPS coordinates, waypoints, destinations, addresses, and location search parameters associated with GPS navigation software;

7. saved searches, locations, and route history in the memory of the SUBJECT TELEPHONE;

8. internet browsing history, to include, internet searches in the memory of each SUBJECT TELEPHONE;

9. any and all evidence relating to instant messaging applications or programs on the SUBJECT TELEPHONE;

10. images and videos in the memory of each SUBJECT TELEPHONE; and

11. evidence of user attribution showing who used or owned the SUBJECT TELEPHONE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including

any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

It is specifically authorized that stored electronic information, data, information and images contained in the above-described **SUBJECT TELEPHONE** may be reproduced by printing said stored electronic information or otherwise reproducing said stored electronic information, by converting said stored electronic information, or by copying said stored electronic information into storage in another device/s.

## ATTACHMENT C

**"Original Affidavit"**